## PENFIELD vs. CLARK.

When a vendor, in a contract for the sale of land, covenants that he will exe-
cute and deliver to the vendee, his heirs and assigns, a deed of conveyance
*in fee simple, with a covenant against his own acts,* and the premises are incum-
bered, at the time, by taxes assessed thereon and for some part of which a
sale of the premises, for a term of years, has actually been had, the pur-
chaser is justified in refusing to accept a deed and pay the purchase money,
although a deed be tendered which is, in form, a compliance with the
contract.

When a contract calls for a deed conveying a fee simple, it is not satisfied by
giving a deed which conveys a fee incumbered by liens.

In every contract for the sale of land there is an implied warranty that the
vendor has a good title; unless the warranty is *expressly excluded by the
terms of the contract.* The provision for a covenant in the deed against the
vendor's own acts, is not an express exclusion of the implied covenant, and
is not in any manner inconsistent with it.

When a contract calls for the fee, the law implies that the fee is in the vendor;
and if it is not, the vendee is at liberty to disaffirm the contract.

A covenant, in a contract of sale, has no operation on the title at the time
of making the contract, and does not take effect until the delivery of
the deed.

It throws no light on the intention of the parties, as to the title to be conveyed;
and even though the contract expressly provides that there shall be no cove-
nant whatever, in the deed, the purchaser will still be entitled to a perfect
title to the land. *Per* MULLIN, J.

APPEAL, by the defendant, from a judgment entered
upon the report of a referee.

On the 25th day of February, 1860, the plaintiff received
a conveyance of a certain parcel of land situate in the city
of Oswego, and immediately thereafter, and on the same
day, entered into a contract in writing with the defendant,
whereby the plaintiff, in consideration of $1701.52 paid,
and on the condition that the defendant paid $990 on the
3d day of May then next, and the further sum of $6500 in
one year from the 3d day of May then next, and also paid
all taxes and assessments levied or assessed on said prem-
ises from the date of the contract, covenanted and engaged
to execute and deliver to the defendant, his heirs, assigns,
&c., "a deed of conveyance in fee simple, with a covenant

Penfield *v.* Clark.

against his own acts only," of and for the premises above mentioned. The defendant paid the $990 at maturity, but did not, nor did any one in his behalf, pay the $6500, or any interest thereon. The defendant assigned the contract to Enoch B. Talcott, November 5, 1860. After the said sum of $6500 became due, the plaintiff offered to the said Talcott to perform said contract on his part, and give the deed; and Talcott said he was ready to fulfill on his part, provided the plaintiff would pay the taxes and assessments on the premises, accrued or assessed prior to the date of the contract, and he declined to receive a deed and pay the money unless that was done. This action was commenced on the contract, on the 24th of September, 1861. The defendant, in his answer, insisted that the plaintiff was bound to pay the taxes, &c., levied prior to the date of the contract, &c.

The action was referred to a referee, to hear and determine the same. The cause was tried before the referee, who made his report in writing, and ordered judgment for the plaintiff, and against the defendant, for the balance due and unpaid on the contract, including interest and costs.

*E. B. Talcott,* for the appellant.

I. The agreement by the plaintiff, in his contract with the defendant, to " execute and deliver to him, his heirs. and assigns, a deed of conveyance in fee simple," was, in its legal effect, an agreement to make a conveyance which would carry the title in fee simple, free of all incumbrances. (*Rawle on Covenants, for title,* [*ed. of* 1854,] *p.* 566, *et seq.* 2 *Sugd. on Vend.* 419, subd. 2, 3 *and* 4. *Burwell* v. *Jackson,* 9 *N. Y.* 544. *Pomeroy* v. *Drury,* 14 *Barb.* 418. *Fletcher* v. *Button,* 4 *Comst.* 400. *Carpenter* v. *Bailey* 17 *Wend.* 244. *Van Eps* v. *Mayor, &c., of Schenectady,* 12 *John.* 436. *Clute* v. *Robison,* 2 *id.* 595.) The first four

cases above cited, overruling *Gazley* v. *Price*, (16 *John.* 267,) and *Parker* v. *Parmele*, (20 *id.* 130.)

II. The provision in the contract, that the plaintiff should insert in his deed of conveyance a "covenant against his own acts only," is entirely distinct from his agreement to convey the property in fee simple, and cannot qualify or impair the legal import of that agreement. 1. The covenants to be inserted in the deed are for the protection of the purchaser against claims on the property which may be discovered after the giving of the deed, and the character and extent of these covenants depend, in all cases in this State, on the language of the contract in execution of which the deed is given. If the contract calls for a warranty deed, not only must the grantor's title be perfect, but the deed must contain a covenant of warranty. (14 *Barb.* 418. 17 *Wend.* 244.) If the contract only requires the seller to "execute a deed," the seller is equally bound to convey a perfect title, but the deed may be without warranty or covenants. (12 *John.* 436.) So in all the cases, the provisions of the contract in respect to the covenants to be inserted in the deed, are held to relate to the form of the deed only, and never excuse the seller from the duty of making a good title. (*See cases cited under Point I.*) 2. The purchaser having a legal right to a perfect title under every contract for the sale of real estate, an agreement by which such right is to be disregarded, should be clear, distinct and express. (*Rawle on Covenants, for title,* 569.) 3. If the language of the contract be ambiguous, it is to be taken most strongly against the party using it. (4 *Kent's Com.* 556.) 4. The delivery and acceptance of a deed under articles of agreement is, *prima facie,* an execution of the whole contract. (10 *John.* 297.) 5. There is an implied warranty of title in a contract for the sale of land; but on taking a deed, the rule *caveat emptor* applies, and the purchaser must then rely on the express covenants in his deed. (9 *N. Y.* 541, *et seq.*

*Rawle on Covenants, for title,* 569.    1 *Mees. & W.* 695.    5· *B. & Adol.* 992.    2 *Sugd. on Vend.* 419, *subd.* §§ 2, 3, 6.)

·III. The clause in the contract, that the defendant was to pay all taxes assessed on the property after that date, excludes the idea that he was to pay those which had been before assessed. . (*Judson* v. *Wass,* 11 *John.* 525, 528.)

. *B. B. Burt,* for the respondent.

I. By the terms of the contract it is clear that it was the intention of the parties that on the performance by the defendant or his assignee, the plaintiff was to execute a quit-claim deed, with a covenant against his own acts only, or in other words, was to convey just such a title as he had acquired. (*Rawle on Covenants, for title, pp.* 547, 551, *ed. of* 1860. *Id. pp.* 565, 569.) There was not a case cited by the defendant's counsel on the trial, and I cannot find one, where it has been held that a purchaser has been allowed to decline to fulfill his purchase, except in cases where it was clearly to be implied, from the contract, that it was contemplated by the parties that he was to be furnished with a good title and a clear title. And the cases go·no further than to hold, that where it appears, before executing the conveyance and payment of the purchase money, that the vendor has not such title as he has agreed to give, the vendee is not bound to go on and complete his purchase and take the conveyance, and then look to the personal responsibility of his grantor for his damages. If the vendor agrees "to give a good and sufficient deed," or to "give a good title," or ".to give a warranty deed," or even if he agrees generally to "sell and convey a certain piece of land," and there is nothing in the contract to show that the deed is not to include all of the usual covenants, then the law will imply that it was the intention of the parties that the deed is to contain such covenants, and of course, if it is ascertained before completing the conveyance that such a title cannot be given, the law will not

Penfield *v.* Clark.

require the purchaser to go on and complete the agreement in form, while it is apparent that he cannot have what he really bargained for. On the contrary, wherever it appears from the contract that the vendor was not to give a complete title, but only such title as he had acquired, the purchaser cannot afterwards say that such a title does not satisfy him, and break it off; for it is precisely what he bargained for. There is nothing to prevent a sale and purchase of a doubtful title to a piece of land, and where such is the case it is to be presumed that each party fixes his own valuation upon it, and when they once agree upon it the law holds them to it as well as to any other contract. Now the contract in this case clearly showed on its face that there was question, at least, whether there were not incumbrances, or liens upon the land, for the remarkable words were used, to wit: The plaintiff was " to execute and deliver a deed of conveyance in fee simple, with a covenant against his own acts only." Taking the latter clause into consideration, who can doubt that, by the terms of the contract, it was to be a quit-claim deed, with a covenant against the plaintiff's acts only, or in other words, he was to convey just such a title as he had acquired. And when we take into account the situation of the parties—the fact that the premises were worth $15,000—it is most manifest that they could not have intended anything more than that. Is it not clear, from the contract, that when it was made, the defendant was to run his own risk as to the goodness of the plaintiff's title? The language of Chancellor Kent, in *Winnie* v. *Reynolds,* (6 *Paige,* 412,) is full to the point. It cannot be denied that a quit-claim deed to one and his heirs is a deed in " fee simple," or " in fee," which is the same thing. And in *Van Eps* v. *The Corporation of Schenectady,* (12 *John.* 436,) where the agreement was, that " a deed will be executed by the mayor, aldermen and commonalty of the said city to the said Abraham Van Epps, his heirs and

assigns forever," and yet, although the title failed, the court held that the purchase money paid could not be recovered back, and that under such an agreement the purchaser was entitled to only a quit-claim deed. And this case, so far as I have been able to ascertain, has never been questioned. (*See, also, Nixon* v. *Hyserott,* 5 *John.* 58; *Fuller* v. *Hubbard,* 6 *Cowen,* 13.)

The counsel for the defendant, on the trial, seemed to lay great stress on the provision in the contract whereby the defendant agreed also to pay all taxes, &c., levied or assessed on the premises from the date of the contract, and claiming that that showed that it was the intention of the parties that the plaintiff should pay all taxes, &c., prior to the date of the contract. I do not see anything in that clause which, in any way, conflicts with my interpretation of the contract. But for that provision the plaintiff would have been compelled to pay the taxes, &c., levied after the date of the contract to the time of the execution of the deed, in order to relieve himself from his covenant in the deed against his own acts, as a tax levied while he held the title would clearly come within the provisions of the covenant in the deed.

II. The plaintiff having offered to perform the contract on his part, and the defendant having failed to perform it on his part, the judgment was correct, and should be affirmed, with costs.

*By the Court,* MULLIN, J. The only question presented for decision on this appeal is, whether a purchaser of real estate is justified in refusing to accept a deed and pay for the land under a covenant, by which the vendor has obligated himself to *execute and deliver to the vendee, his heirs and assigns, a deed of conveyance in fee simple, with a covenant against his own acts,* when, at the time of the making of such contract, the premises are incumbered by taxes assessed thereon, and, for some part of which, a sale of the

premises has actually been had for a term of years. The deed tendered was, in form, a compliance with the contract.

It will be seen that the contract calls for a deed of conveyance in fee simple. This is the kind and nature of the estate to be conveyed. In this State, and indeed generally, in this country, a fee simple will be conveyed by a deed of quit-claim, or by any other form of conveyance by which a grant of the estate of the grantor is made to the grantee, provided the grantor has, at the time, an estate in fee in the premises conveyed; unless a lesser estate is expressly mentioned or necessarily implied. (4 Kent's Com. 461. 2 Hilliard's Abr. 311, § 41, &c. Id. 314, § 63, &c. 3 R. S. 38, §. 1, 5th ed.)

If the object of the parties to a contract for the sale and purchase of land is to provide for the conveyance only of such an estate as the vendor has in the premises, it is only necessary to provide for a deed of quit-claim. That conveys precisely such estate as the grantor has, and precisely as he holds it. When a deed is called for which shall convey a fee simple, a better estate would seem to be contemplated than one which a mere quit-claim would convey. The words of the covenant regulate the estate, not the mere form of the deed. The courts lost sight of the intention of the parties when they construed the contract as regulating the form of the deed, instead of the nature of the estate to be conveyed.

But it has never been held, I apprehend, that when the contract called for a deed which conveyed a fee simple, it was satisfied by giving a deed which conveyed a fee incumbered by liens.

It has been held, in a few cases, that when the vendor covenanted to convey by a good and sufficient deed, or a good warranty deed of conveyance, his covenant was satisfied by a deed good and sufficient in form, notwithstanding the title may have been incumbered, or otherwise de-

Penfield *v.* Clark.

fective. (*Gazley* v. *Price*, 16 *John.* 267. Parker v. *Parmele*, 20 *id.* 130. *Fuller* v. *Hubbard*, 6 *Cowen*, 13.) These cases are substantially overruled in the following cases: *Clute* v. *Robison*, (2 *John.* 594;) *Judson* v. *Wass*, (11 *id.* 525;) *Van Epps* v. *Schenectady*, (12 *id.* 436;) *Fletcher* v. *Button*, (6 *Barb.* 646;) *S. C.*, (4 *N. Y.* 396;) *Carpenter* v. *Bailey*, (17 *Wend.* 244;) *Pomeroy* v. *Drury*, (14 *Barb.* 418;) *Atkins* v. *Bahrett*, (19 *id.* 639;) *Everson* v. *Kirtland*, (4 *Paige*, 628;) *Traver* v. *Halsted*, (23 *Wend.* 66;) *Burwell* v. *Jackson*, (9 *N. Y.* 535.)

In the latter case, Selden, J., holds that there is, in every contract for the sale of land, an implied warranty that the vendor has a good title to the premises contracted to be sold, unless such warranty is expressly excluded by the terms of the contract. It is not very material whether the covenant to give a deed, or to give a good and sufficient deed of conveyance, are so construed as to entitle the purchaser to a valid title; or whether the same result is reached by implying a covenant of warranty that the vendor has a good title.

The case of *Burwell* v. *Jackson* seems to me entirely decisive of this case; as it gives to the defendant the benefit of the implied warranty, and holds that the title of the plaintiff being defective when the contract was made, the defendant had the right to treat the contract as rescinded, and the failure of title was a good defense to an action for the purchase money.

The plaintiff's counsel does not, in terms, deny but that the cases cited dispose of this case, unless the provision in the contract that the deed, when given, shall contain a covenant against the plaintiff's own acts, takes the case out of the principles decided in those cases. It only remains to inquire whether the clause of the contract, referred to, has the effect contended for.

It cannot require argument to demonstrate that if in

every contract for the sale of land there is an implied warranty that the vendor has a good title, unless the warranty is *expressly excluded by the terms of the contract,* the provision for a covenant against the vendor's own acts is not an express exclusion of the implied covenant; that it is in no manner inconsistent with the implied covenant.

It is the granting or *habendum* clause of the deed which transfers the title; the covenants do not, and were never intended to, convey the title. The covenants in a deed are designed to operate after the title, if there is any, has vested in the purchaser, and by way of damages, to indemnify against any defects or imperfections there may be in the title; or, if there has been an entire want or failure of title, to indemnify the purchaser, in that contingency.

The intention of the parties is to have effect in this as in all other contracts; and in order to ascertain the intention, it is proper to take in consideration all the provisions of the contract; and if the covenant under consideration shows that it was the design of the vendor to sell, and of the vendee to receive, only such title as the former had, to the premises, we must give it effect. But, as already suggested, the contract calls for the fee, and the law implies that the fee is perfect in the vendor; and if it is not, the vendee is at liberty to disaffirm the contract.

The covenant has no operation on the title at the time of making the contract, and does not take effect until the delivery of the deed. A covenant is of very little consequence, when the title is perfect, as it must be, in order to enable the vendor to fulfill his contract. Covenants are taken for more abundant caution. One man is satisfied with the covenant of warranty, only; another wants what is popularly known as a full covenant deed; another is satisfied with the covenant contended for in this case.

The kind or nature of the covenant required to be given

depends more upon the source from which the title has been derived, by the vendor, than on the nature of the title itself. If the vendor has obtained his grant from a man whose title has been repeatedly examined and known to be perfect, a purchaser might well be satisfied with a covenant that would protect him against any incumbrance attaching, or other defect occurring, since the date of the deed to him. In other words, the covenant throws no light on the intention of the parties, as to the title to be conveyed. Had the contract in question expressly provided that there should be no covenant whatever, in the deed, the defendant would still have been entitled to a perfect title to the land.

I am of the opinion that the referee erred in the construction given by him to the contract; and that his judgment should be reversed, and a new trial ordered; costs to abide the event.

[ONEIDA GENERAL TERM, January 7, 1863. *Mullin, Morgan* and *Bacon,* Justices.]